ALLIS-CHALMERS MFG. CO. et al. v. BOARD.

No. 4919.

Court of Civil Appeals of Texas. Amarillo.

June 20, 1938.

Reeder, Reeder & Reeder, of Amarillo, for appellant Allis-Chalmers Mfg. Co.

Grady Hazelwood, of Amarillo, for appellants Theo Spector and City Pipe & Junk Co.

Jos. H. Aynesworth, of Borger, for appellee.

FOLLEY, Justice.

This suit was instituted by O. A. Board, appellee herein, against the appellants, Allis-Chalmers Manufacturing Company, City Pipe & Junk Company, and Theo Spector, President and Manager of the latter company, for damages alleged to have been sustained by Board in the sum of $1600.00 by reason of the taking and destruction by appellants of a tractor belonging to the appellee. Upon a verdict of the jury based upon special issues the court rendered judgment for the appellee against all the appellants, jointly and severally, in the sum of $725.00.

The appellee alleged that on the first day of January, 1937, he was the owner of a farm tractor with plate number 749, purchased by him in June, 1928, which was situated on land farmed by the appellee in Hutchinson County, Texas, and located eleven miles north and one mile west of the town of Stinnett; that on said date the appellants conspired and confederated together to take said tractor; that the Allis-Chalmers Company gave to the other appellants an order for such tractor authorizing the junk company to take the tractor and that the junk company delivered such order to two brothers by the name of Ferguson who destroyed and removed the tractor from appellee's premises; that the Allis-Chalmers Company claimed to be the owners of another and different tractor with plate number 1460 which was then located on the townsite of Pringle, Texas, on the east side of the highway; that tractor number 749 was situated about one mile north and one mile west of the town of Pringle; that the Allis-Chalmers Company intended to transfer and sell to the junk company tractor number 1460 and that the Ferguson brothers wrecked tractor number 749 by reason of the negligence of the Allis-Chalmers Company in not giving them proper directions and orders for the tractor intended to be conveyed; and that the reasonable use value to appellee of tractor 749 was $1600.00 and that it had no market value.

The appellants urged a general demurrer, certain special exceptions, and the City Pipe & Junk Company and Theo Spector specially pleaded that if any such tractor was wrongfully taken that the same was not at their request or by any person authorized by them; that the Ferguson brothers were

not acting as their agents, servants or employees but were engaged in their own private undertaking as independent contractors.

In response to the special issues submitted, the jury made the following findings: (1) the Allis-Chalmers Company did not give a written order to Spector or the junk company; (2) the Allis-Chalmers Company was negligent in giving the written memorandum introduced in evidence; (3) such negligence was a proximate cause of the taking of appellee's tractor; (4) the Allis-Chalmers Company gave an oral order to Spector or the junk company for a tractor; (5) the Allis-Chalmers Company was negligent in giving such oral order; (6) such negligence was a proximate cause of the taking of appellee's tractor; (7) neither Spector nor the junk company got a written order for a tractor from the Allis-Chalmers Company; (8) Spector and the junk company got an oral order for a tractor from Allis-Chalmers Company; (9) neither Spector nor the junk company directed E. R. and J. L. Ferguson, or either of them, to get the tractor mentioned in the memorandum introduced in evidence; (10) the Allis-Chalmers Company failed to give the number of the tractor in the memorandum introduced in evidence; (11) such failure was negligence; (12) such negligence was a proximate cause of the taking of the tractor; (13) and the value of the tractor to the plaintiff at the time and place it was taken was $725.00. These issues were all that were submitted to the jury.

The appellants Spector and the City Pipe & Junk Company filed a joint brief separate and distinct from the brief of the appellant Allis-Chalmers Company, and in such brief they present matters in their behalf not germane to the appeal of the Allis-Chalmers Company. They assert that the uncontradicted testimony shows that the Fergusons were acting not as their agents, servants or employees, but as independent contractors without authority or direction from such appellants, and the court was unauthorized to render judgment against such appellants. They further assert that it was fundamental error for the court to render any judgment against them in view of the above findings of the jury.

We think the appellants Spector and the junk company are correct in both contentions. The testimony shows that Mr. Fields, a representative of the Allis-Chalmers Company, prior to the transaction involved herein, went to the junk company's place of business in Amarillo and inquired of Spector if his company bought junked tractors and if Spector would send out and pick up several old tractors for junk. Spector replied that he never sent after tractors but that if Fields would bring the tractors in he would pay him $5.00 per ton for them. Spector told Fields that he (Spector) might find some one for Fields who would bring in the tractors. Fields asked Spector to try to find some one to do the hauling. Ferguson brothers came in that same day with a load of junk and Spector notified them of the desires of Fields and the Fergusons agreed to go see Fields in regard to the matter. The Ferguson brothers then went over to see Mr. Fields who was not in his office. The next day Fields came over to Spector's place and made a deal with the Fergusons whereby Fields sold a tractor to the Fergusons for $4.00. At this time, in the absence of Spector, who was in Dalhart at the time, Fields gave the Fergusons their instructions as to how to locate the tractor. With such directions the Fergusons set out on their mission, found tractor number 749, wrecked it, and hauled it to Amarillo and sold it to the appellant junk company in its wrecked condition. E. R. Ferguson, who was not a party to the suit, testified that Spector did not direct him or his brother in any manner in regard to the tractor and that no one in Spector's place of business gave him or his brother any directions as to how to get the tractor.

The Fergusons owned their own truck and equipment and had been engaged in the wrecking and hauling of junk for some time prior to the incident herein involved. Spector and his company had no interest in their equipment or business, exercised no control or supervision over their movements, but only purchased from them, as well as from many other such haulers, such junk as was brought to the junk company. We think the record discloses beyond question that as far as the junk company and Spector were concerned the Fergusons were independent contractors. We also are of the opinion that the testimony overwhelmingly supports the theory of the junk company and Spector that such appellants had nothing whatever to do with the acts and conduct of the Fergusons. We fail to find any testimony that even remotely connects such appellants with any wrongful or negligent conduct with ref-

erence to the destruction of the tractor. As far as a conspiracy existing between the appellants to destroy the tractor in question is concerned, there is not only no finding in support of such theory, but no testimony to support such a finding.

 Regardless of the insufficiency of the testimony to support a judgment against the junk company and Spector, it is our opinion there is no finding by the jury in the above issues that would support any sort of a judgment against the junk company and Spector. Moreover, the jury finding in issue number nine to the effect that neither Spector nor the junk company directed the Fergusons to get the tractor mentioned in the memorandum, completely exonerates such appellants from any wrong doing in connection with the taking of the tractor. The appellee asserts that the reception of the tractor by such appellants in its wrecked condition brings these appellants under the rule announced as to joint tort-feasors in McBeath v. Campbell et al., Tex.Com.App., 12 S.W.2d 118. Appellee might be correct in such contention if the appellants Spector and the junk company had been responsible for, or had committed, some wrong in connection with the wrecking of the tractor, or if the appellee had substantiated his allegations of a conspiracy or prearranged design to wrongfully obtain such tractor; but no such conditions exist. To be guilty as a joint tort-feasor one must be guilty of some wrongful or negligent conduct. There is neither proof nor findings in this case that would condemn Spector or the junk company of any such conduct. The mere fact that such appellants received the tractor in its decomposed condition would, in our opinion, be insufficient to make such appellants liable for its destruction in the absence of any showing of their connection with, or responsibility for, such destruction. It is our opinion, under the facts and jury findings in this case, that the court should have rendered judgment in favor of the City Pipe & Junk Company and Theo Spector. City of San Antonio et al. v. Haynes, Tex.Civ.App., 5 S.W.2d 205.

 All of the appellants assign as error the submission of issue number thirteen inquiring of the jury the value of the tractor to the plaintiff because the proof did not show that the tractor did not have a market value. The only testimony in the record bearing on the issue as to the tractor not having a market value was from the appellee himself. He was asked the following question: "For a tractor of that kind in that condition, was there a market there for it?" In response to such question the appellee answered: "Not that I know of." Immediately thereafter, over the objection of the appellants, the appellee testified that it had a use value to him in the sum of $1600.00. There was other testimony in the record that the tractor did have a market value. The witness Conlan testified that he had sold quite a number of this type of tractor during the twelve months preceding the trial, that there was a market value for same in the community involved, and that it was worth from $4.00 to $25.00. The witness, E. R. Ferguson, testified that he had wrecked 150 or 200 tractors during the two years before the trial, which were scattered all over the entire Panhandle of Texas; that he had farmed and was familiar with tractors; and that such a tractor had a market value of $15.00 at the time and place taken. In view of this testimony it is our opinion that the appellee did not establish the fact that the tractor had no market value. The testimony of the appellee in this respect is certainly no more than negative testimony which proves nothing except that appellee did not know of any market for the tractor. Furthermore, there is a total absence of any testimony as to whether or not such tractor could be replaced, and, if so, what it would cost the appellee to replace the tractor. Even though the tractor had no market value the appellee might have been able to have replaced it with another as efficient and suitable for his use at a very low cost to him. We think the measure of damages in a case of this sort is very ably expressed by Judge Sharp in the case of International-Great Northern R. Co. v. Casey, Tex. Com.App., 46 S.W.2d 669, in the following language (page 670):

"The primary principle to be applied in awarding damages for negligent injuries to property is that the owner shall have actual pecuniary compensation for the loss sustained. If the action is based upon the loss of the property, the general standard fixed for the measure of damages is the value of the property destroyed or damaged. The rule is settled that, where property is destroyed or injured, which has a market value, this must be shown by the owner as the measure of damages; where it has neither a market value nor a real value, but it is shown what it would cost to replace or reproduce the article,

then such cost is the measure of recovery. Where it has neither a market value nor a real value, and it cannot be reproduced or replaced, then in that event it would be proper to show what it was worth to the owner. In other words, what is the actual loss in money sustained by the owner on account of being deprived thereof? 13 Tex.Jur. §§ 62, 63, and 64, and authorities collated thereunder; Chicago, R. I. & G. R. Co. v. Zumwalt (Tex.Com.App.) 239 S. W. 912; Missouri, K. & T. R. Co. v. Crews, 54 Tex.Civ.App. 548, 120 S.W. 1110."

The appellee's proof in respect to value of the tractor falls far short of the rule expressed in the Casey Case and we think such rule is the correct rule to apply in this case. We therefore sustain this assignment in behalf of all the appellants. Lincoln v. Packard et al., 25 Tex.Civ.App 22, 60 S.W. 682.

 In view of another trial between the appellee and the Allis-Chalmers Company we wish to discuss briefly another assignment of the Allis-Chalmers Company. Counsel for appellee in his argument before the jury used the following language: "Gentlemen of the Jury, I want you to go out and return a verdict in this case that will teach these big implement companies not to trespass upon our private citizens' lands and destroy and tear up their property." Such argument was objected to by the appellant Allis-Chalmers Company and such objection was overruled by the court. Under the facts of this case we think such argument and action of the court presents reversible error. Nicholson et ux. v. Nicholson, Tex.Civ.App., 22 S.W.2d 514; Western Union Telegraph Co. v. Smith, 52 Tex. Civ.App. 107, 113 S.W. 766; St. Louis Southwestern Ry. Co. of Texas v. Boyd, 40 Tex.Civ.App. 93, 88 S.W. 509; Dillingham et al. v. Scales et ux., 78 Tex. 205, 14 S.W. 566; Postal Telegraph Cable Co. of Texas v. Smith, Tex.Civ.App., 135 S.W. 1146; Gulf, C. & S. F. Ry. Co. v. Dooley, 62 Tex. Civ.App. 345, 131 S.W. 831.

There are numerous assignments based on alleged defects in the pleadings of the appellee, which as presented, we deem unnecessary to discuss except to say that the petition of the appellee, in our opinion, is not subject to a general demurrer. The other matters about which complaint is made will likely not occur in the same manner, if at all, upon a retrial of this case.

The judgment of the trial court as between the appellee and the Allis-Chalmers Manufacturing Company, is reversed and remanded, and as between the appellee and the City Pipe & Junk Company and Theo Spector is reversed and rendered in favor of the City Pipe & Junk Company and Theo Spector.